UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In Re:                                                    Chapter 7

                                                          Case No. 1-14-42483-cec

JENNIFER A. GUCCIARDO aka
JENNIFER DILANDRO


                        Debtor.
-------------------------------------------------------------X


DECISION ON MOTION PURSUANT TO 11 U.S.C. 522(f)


APPEARANCES:


Jeffery Herzberg, Esq.                          Christi M. Gelo, Esq.
Zinker & Herzberg, LLP                          The Law Office of Christi M. Gelo, P.C.
300 Rabro Road                                  135-24 Hillside Avenue
Hauppauge, New York 11788                       Richmond Hill, New York 11418
Attorney for George Pappas and                  Attorney for Jennifer Gucciardo
Proactive Dealer Services, Inc.


CARLA E. CRAIG
Chief United States Bankruptcy Judge

<u>SUMMARY</u>

This matter comes before the court on the motion pursuant to 11 U.S.C. § 522(f)(2) filed by Jennifer Gucciardo (the "Debtor") to avoid the judicial lien in the amount of $213,169.53 (the "Judicial Lien") of George Pappas and Proactive Dealer Services, Inc. (the "Lienholders") on the Debtor's primary residence.  The Debtor contends that her homestead exemption is impaired because the sum of all the liens, including the Lienholders' claim, when added to her homestead exemption, exceeds the value of the residence as of the date of commencement of this case by $195,575.78, and seeks to avoid the Judicial Lien to that extent. The Lienholders allege that the Debtor's exemption is not impaired because the value of the residence exceeds the sum of all liens and the homestead exemption.  A hearing was held on the value of the property, at which appraisal testimony was taken.  For the reasons set forth below, the Debtor's motion is denied.

<u>JURISDICTION</u>

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 1334(a) and 157(b)(2)(K).  This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rules of Bankruptcy Procedure 7052.

<u>BACKGROUND</u>

The facts below are not in dispute except where otherwise noted.

The Lienholders obtained a judgment against the Debtor in the Supreme Court of New York, County of Queens, Index No. 9105/11 for the amount of $213,169.53 on February 17, 2012.  (Case No. 12-42227-CEC, Claim No. 3.)  As a result, the Lienholders obtained the Judicial Lien on the Debtor's primary residence located at 161-30 88th Street, Howard Beach, NY 11414 (the "Property").  The Debtor filed a voluntary petition for Chapter 13 relief on

-1-

March 28, 2012 (Case No. 12-42227-CEC, ECF No. 1),[1] and filed an objection to the

Lienholders' proof of claim on June 1, 2012 (Case No. 12-42227-CEC, ECF No. 23) which

was withdrawn with prejudice pursuant to a stipulated order entered on September 14, 2012.

(Case No. 12-42227-CEC, ECF No. 69.)  The Debtor requested that the Chapter 13 case be

dismissed on November 13, 2012, and the case was closed on February 7, 2013.  (Case No.

12-42227-CEC, ECF No. 82, 90.)

      The Debtor commenced this Chapter 7 case on May 16, 2014 (the "Petition Date").

(Case No. 14-42483-CEC, ECF No. 1.)  On January 26, 2017, the Debtor filed a motion to

avoid the Judicial Lien pursuant to 11 U.S.C. § 522(f)(2), asserting that the Judicial Lien

impairs the Debtor's homestead exemption. (Case No. 14-42483-CEC, ECF No. 43.)  In

addition to the Judicial Lien, the Property was, on the Petition Date, encumbered by a

mortgage lien held by Wells Fargo Bank, N.A., securing a debt of $312,700, and a mortgage

lien held by Bank of America securing a debt of $135,000.  The Debtor's valuation of the

Property, based on an appraisal of the Property conducted in April, 2014 (the "Maltz

Appraisal") was $570,000.  Id.  The Debtor's calculation of the homestead exemption

impairment, based on the formula set forth in 11 U.S.C. § 522(f)(2)(A), is set forth below:

| | |
|---|---|
| The lien being tested for avoidance: | + $ 213,169.53 |
| All other liens: | + $ 402,406.25 |
| The maximum exemption allowable without liens | + $ 150,000.00 |
| Total: | = $ 765,575.78 |
| *Subtract* Value of the Property absent liens | - $ 570,000.00 |
| The extent of impairment of homestead exemption: | = $ 195,575.78 |

Therefore, the Debtor asserts the Judicial Lien (of $213,169.53) should be reduced by the

amount of the impairment ($195,575.78), leaving $17,593.75 ($213,169.53 - $195,575.78)

remaining as a lien on the Property.

---

[1] All references to "ECF No." are to documents, identified by docket entry number, filed in the bankruptcy case being discussed.

The Lienholders objected to the motion to avoid the Judicial Lien, claiming, among other things, that the Maltz Appraisal undervalued the Property.  A hearing was held on June 1, 2017 to determine the value of the Property as of the Petition Date.  Robert Gangi, who conducted the Maltz Appraisal, testified for the Debtor, and Manny Zevallos, who appraised the Property on or about March 10, 2017 (the "Zevallos Appraisal"), testified for the Lienholders.  The Zevallos Appraisal valued the property at $800,000 as of May 14, 2014 ($230,000 higher than the Maltz Appraisal's valuation).

Both appraisals used the Sales Comparison Approach, but used different comparable sales to reach their result.  The Property is a 59-year-old, 4-bedroom, 2.5/3 bathroom, single family home located on 0.9 acres.  Both appraisers testified that the comparables chosen were the most similar to the Property.

The Maltz Appraisal compared the sales of six homes in good condition (the "Maltz Comparables") that were within 0.30-0.50 miles of the Property, between 44-54 years old, with 3-5 bedrooms and 2-3 bathrooms located on 0.08-0.1 acres.  The Maltz Comparables were sold between November 2013 and February 2014 with prices from $495,000 to $649,400.

The Zevallos Appraisal compared the sales of three homes in average to good condition (the "Zevallos Comparables"), that were within 0.2-0.3 miles of the Property, between 44-59 years old, with 3-4 bedrooms and 2-4 bathrooms, and all located on 0.09 acres.  They were sold between September 2013 and April 2014 with prices from $700,000 to $800,000.

<u>DISCUSSION</u>

Section 522(f) sets forth a mathematical formula to determine whether a lien impairs a debtor's exemption.  A lien impairs an exemption to the extent that "the sum of all liens on

the property, including the lien under consideration, together with the value that the debtor

could claim as exempt in the absence of liens on the property, exceed the value of the

debtor's interest in the property if it were totally unencumbered." In re Armenakis, 406 B.R.

589, 617 (Bankr. S.D.N.Y. May 22, 2009) (quoting 4-522 Collier on Bankruptcy P 522.11[3]

(15th ed. rev. 2009)).  "Value" means "fair market value as of the date of the filing of the

petition".  Id.  A lien may be avoided to the extent that the sum of liens and the exemption

exceed the value of the debtor's interest in the property.

The party seeking to avoid a lien under § 522(f) bears the burden of proof by a

preponderance of evidence on every statutory element.  In re Schneider, 2013 Bankr. LEXIS

4730, at *11 (Bankr. E.D.N.Y. Nov. 8, 2013); In re Armenakis, 406 B.R. 589, at 604.  One

such element is the fair market value of the property as of the petition date in order to show

that the lien at issue impairs the exemption.

It is necessary, therefore, to examine the appraisals and the testimony proffered by the

parties in support of their contentions as to value to determine whether the Debtor has met her

burden of proof on this issue.  The Sales Comparison Approach, which analyzes sales of

properties that are similar to the subject property, is the proper valuation method used to

determine the value of the Property for the purposes of this motion.  Both the Maltz Appraisal

and the Zevallos Appraisal were based on this approach.

The court must pay close attention in cases such as this where there is a significant

difference between the property valuations of the parties.  Here, there is a $230,000

difference between the appraisal values of the Debtor and the Lienholders, which calls into

question the Debtor's valuation, at least where, as in this case, the Debtor bears the burden of

proof.  "Where there is a significant difference in value between a debtor's appraisal of a

property and the secured creditor's appraisal of a property, the accuracy of the debtor's

appraisal is called into question."  In re Pod, 560 B.R. 77, 82 (Bankr. E.D.N.Y. Oct. 25,

-4-

2016) (citing <u>In re Robinson</u>, 2015 Bankr. LEXIS 3052, 2015 WL 5309513 (Bankr. D.N.H. Sept. 10, 2015)).  "In determining which appraisal figure to use for purposes of establishing value of exempt property, a bankruptcy [sic] court is not bound by any figure in particular, but merely guided by them all."  <u>In re Hannigan</u>, 2005 Bankr. LEXIS 2445, *7 (Bankr. D. Ma. October 3, 2005) (quoting <u>In re Rehbein</u>, 49. B.R. 250, 253 (Bankr. D.Ma. 1985)).

The two appraisal reports were largely consistent in a majority of the features of the Property noted.  Both described the Property as having 10 rooms and 4 bedrooms.  Both reports noted that the Property has central air conditioning.  Both described the condition of the Property as good.  However, the Zevallos Appraisal noted 3 baths, while the Maltz Appraisal noted 2.5 baths; also, the Zevallos Appraisal noted 2,538 square feet of living space, while the Maltz Appraisal noted 2,200 square feet.  There was no testimony provided as to which of these observations was accurate.  The Maltz Appraisal stated that the taxes on the Property were $6,195, as compared to $5,847 noted in the Zevallos Appraisal; however, the real estate taxes for the properties chosen as comparable sales are not noted on either report, so this difference does not seem to have affected valuation; moreover, there was no evidence presented as to the actual real estate taxes on the Property as of the Petition Date. The Maltz Appraisal noted the existence of an in-ground pool on the Property, while the Zevallos Appraisal did not.  Mr. Zevallos testified that this feature would have increased his valuation of the Property by between $25,000 to $40,000 (Tr. at 40), [2] although the Maltz Appraisal made only a $5,000 upward adjustment for this feature.

The difference in valuations arrived at by the two appraisers is attributable to the comparable sales they selected for use in their analysis.  The Zevallos Appraisal used three comparables of varying conditions, from average to good, with sale prices ranging from $700,000 to $800,000.  Mr. Zevallos testified that these were the best comparables out of 55

---

[2] "Tr." refers to the transcript of the hearing held on June 1, 2017.

sales to determine the property's value based on the market trend at that time. (Tr. at 45, 50.) He explained that (1) he used comparables of varying conditions (from average to good condition) to show the range of prices that the Property's value would have fallen within during that time period (Tr. at 50-51), (2) that the comparable sales were the best sales to determine the value of the Property and a good representation of the marketplace in the Property's neighborhood out of a pool of approximately 55 sales (Tr. at 49-50) and (3) that the comparable sales used were all arm's length transactions. The Zevallos Comparables were in closer proximity to the Property (within 3 blocks) than the Maltz Comparables, most of which were 4 blocks or more away. After adjustments to reflect the differences with the Property, the sale prices indicated by the Zevallos comparables ranged between $777,000 and $802,000. The Zevallos Appraisal arrived at a value of the Property of $800,000 - at the high end of this range; however, even if the Property is valued at the low end of this range, the Debtor's homestead exemption would not be impaired.

While Mr. Gangi stated that the Maltz Comparables were the most similar to the Property's description, size, features and location (Tr. at 10), he gave no explanation as to why they were more suitable than the Zevallos Comparables, nor did he provide any testimony analyzing the Zevallos Appraisal or explaining why the valuation it arrived at was incorrect. Where, as in this case, there is no significant disagreement as to the condition or features of the Property, and the difference between the valuations arrived at by the appraisers results from their choices of comparables, it is incumbent upon the party bearing the burden of proof to show, through testimony, why the comparables relied upon by her appraiser were more appropriate or were more appropriately analyzed or, conversely, why the comparables used by the Lienholders were inappropriate or inappropriately analyzed. This the Debtor failed to do.

The Debtor points out that the Maltz Appraisal was based on an inspection conducted one month prior to the Petition Date, while the Zevallos Appraisal is historical, and based on an inspection conducted three years later. However, both appraisers noted the condition of the Property as "good", and both valuations are based on research of comparable sales, the availability of which is not adversely affected by the passage of three years.

One feature of the Property that may have changed between the Petition Date and March 10, 2017, the date when Mr. Zevallos inspected the Property, is the second floor kitchen, which, Mr. Zevallos testified, appears to be different in the Zevallos Appraisal than in the Maltz Appraisal. (Tr. at 34.) Mr. Zevallos testified that he asked the "homeowner" when the kitchen had been installed, but did not receive an answer. Id. On cross examination, Mr. Zevallos testified that the kitchen appeared to have been renovated within the year. (Tr. at 43.) However, there was no testimony establishing whether there was a renovation, what changes were made, or when any such renovation occurred, and no testimony was elicited from Mr. Zevallos as to how the condition of the kitchen had affected his valuation of the Property. He testified that a new kitchen may increase property value by between $25,000 to $40,000 (Id.), but there was no upward adjustment to value in the Zevallos Appraisal based on the condition of the kitchen in comparison to the comparable sales he analyzed (including that of the property rated in average condition). Even if a downward adjustment of $30,000 is made to Mr. Zevallos' valuation, the resulting valuation of $770,000 is still above the value which would result in any impairment of the Debtor's homestead exemption.

In order to establish that the Judicial Lien impairs her exemption in the Property, the Debtor was required to demonstrate, by a preponderance of the evidence, that the value of the Property as of the Petition Date was less than $765,575.78 (which is the sum of the Judicial

Lien, other liens on the Property, and the Debtor's exemption).  The Debtor has failed to meet this burden.

In opposition to the Debtor's motion, the Lienholders also made the argument that the Debtor's application of the formula provided in § 522(f)(2), as set forth above, is incorrect, and that a judicial lien cannot be avoided, even in part, unless the sum of the liens on the Property and the exemption exceeds the value of the Property by the entire amount of the judicial lien. Given the conclusion reached as to valuation, this argument is not addressed.

<u>CONCLUSION</u>

For the foregoing reasons, the Debtor's motion is denied. A separate order will be issued.



**Dated: Brooklyn, New York**
**September 28, 2017**

               **Carla E. Craig**
    **United States Bankruptcy Judge**